**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| IRENE CASTRO, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:12-CV-01535 (VLB) |
| v. | : | |
| | : | |
| JOYES NARCISSE and PATRICK COLLINS, | : | |
| Defendants. | : | September 26, 2013 |

<u>MEMORANDUM OF DECISION DENYING DEFENDANTS' [Dkt. #11] MOTION TO
DISMISS COMPLAINT</u>

I.   <u>Introduction</u>

The Plaintiff, Irene Castro ("Castro"), brings this action against defendant
Connecticut State Police Troopers Joyes Narcisse ("Narcisse") and Patrick
Collins ("Collins" and, together with Narcisse, the "Troopers" or "Defendants") in
their individual capacities for false arrest, unreasonable search and seizure, and
malicious prosecution in violation of the Fourth Amendment and pursuant to 42
U.S.C. § 1983, and for common law conversion of property and intentional
infliction of emotional distress.  The Defendants have moved to dismiss pursuant
to Fed. R. Civ. P. 12(b)(6) on the basis that Ms. Castro's arrest was supported by
probable cause and the search and seizure was incident to Plaintiff's arrest, that
the Defendants are entitled to qualified immunity, and that the Plaintiff has failed
to adequately state either an emotional distress claim or a claim for conversion.
For the reasons that follow, Defendants' Motion to Dismiss is DENIED.

II.   <u>Factual Background</u>

1

The following facts and allegations are taken from Plaintiff's complaint.  On August 3, 2011, Plaintiff Irene Castro, a 78-year-old woman, stopped at the Mohegan Sun Casino ("the Casino") to "enjoy some low stakes gambling, as was her periodic custom."  [Dkt. 1, Compl. ¶ 8].  While at the casino, Castro was detained by Casino employees and then questioned by Troopers Narcisse and Collins, who were investigating a claim made by another female Casino patron who contended that she had mislaid a white envelope containing $1,000 in cash and personal identification.  [*Id.* at ¶¶ 9, 10].  "A camera at the casino recorded the plaintiff bending over to pick up a white envelope and then heading into a female restroom."  [*Id.* at ¶ 11].  Troopers Narcisse and Collins "confronted" Ms. Castro with this evidence and "accused her of violating" Conn. Gen. Stat. § 53a-119, Connecticut's larceny statute.  [*Id.* at ¶ 12].  Defendant Narcisse then issued the Plaintiff a summons and non-surety appearance bond, requiring her to appear at Norwich Superior Court on August 18, 2011.  [*Id.* at ¶ 13].

"In the course of issuing the summons," the Defendants searched the Plaintiff's purse, allegedly "without justification of excuse, and without the consent of the plaintiff," and found $1,000 in the same denomination as the money reported lost by the complaining patron.  [*Id.* at ¶ 15].  Troopers Narcisse and Collins then "confronted" the Plaintiff with the cash, and the Plaintiff told the Defendants "that it belonged to her, and told them she had a bank receipt at home for the withdrawal of those very funds."  [*Id.* at ¶ 16].  The Defendants then seized the $1,000 in cash, took photographs of the funds, and logged receipt of the money on evidence receipt forms used by the State Police.  They then

allegedly immediately gave the $1,000 found in the Plaintiff's purse to the patron who had reported her envelope lost.  [*Id*. at ¶ 17].

Ms. Castro subsequently appeared in Norwich Superior Court and in New London Superior Court, where she pleaded not guilty, filed a motion to dismiss the charges against her, and demanded trial by jury.  [*Id*. at ¶ 18].  "The State of Connecticut entered a *nolle* without the plaintiff's offering consideration of any sort."  [*Id*. at ¶ 19].  The Plaintiff, who had never been arrested prior to this incident, contends that she "was deeply humiliated and distressed by her arrest, being forced to appear in court as an accused criminal, and being held out to the world as a thief."  [*Id*. at ¶ 20].  She claims that the "acts of each defendant were intentional and inspired by malice."  [*Id*. at ¶ 7].

### III.   <u>Standard of Review</u>

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to

relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am.*

4

*Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005) (MRK).

## IV.   Discussion

Defendants Narcisse and Collins move to dismiss Castro's complaint for failure to state a claim upon which relief may be granted because, they allege, Castro's arrest was supported by probable cause, the search of her purse and seizure of the cash were incident to Plaintiff's arrest for larceny, and even if Castro's Fourth Amendment rights were violated the Defendants are entitled to qualified immunity.

### a.   False Arrest and Malicious Prosecution

In analyzing a 42 U.S.C. § 1983 claim of false arrest or imprisonment, federal courts generally look to the law of the state where the arrest occurred. *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).  Under Connecticut law, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another."  *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (quoting *Outlaw v. City of Meriden*, 43 Conn. App. 387, 392 (Conn. App. Ct. 1996)).  "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."  *Walczyk v. Rio*, 496 F.3d 139, 152 n.14 (2d Cir. 2007) (internal quotation marks and citation omitted). Connecticut law places the burden on the false arrest plaintiff to prove the absence of probable cause.  *See Davis*, 364 F.3d at 433 (citing *Beinhorn v.*

*Saraceno*, 23 Conn. App. 487, 491, 582 A.2d 208 (Conn. App. Ct. 1990));

*Vangemert v. Strunjo*, No. 3:08CV00700 (AWT), 2010 WL 1286850, at *4 (D. Conn.

Mar. 29, 2010).

"In order to prevail on a § 1983 claim against a state actor for malicious

prosecution, a plaintiff must show a violation of his rights under the Fourth

Amendment, and establish the elements of a malicious prosecution claim under

state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations

omitted). "To prevail on a malicious prosecution claim under Connecticut law, a

plaintiff must prove the following elements: (1) the defendant initiated or

continued criminal proceedings against the plaintiff; (2) the criminal proceeding

terminated in favor of the plaintiff; (3) 'the defendant acted without probable

cause;' and (4) 'the defendant acted with malice.'" *Roberts v. Babkiewicz*, 582

F.3d 418, 420 (2d Cir. 2009) (quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 446

(Conn. 1982)). Therefore, the existence of probable cause constitutes a complete

defense against a malicious prosecution claim.

Probable cause to arrest exists where an officer has "knowledge or

reasonable trustworthy information sufficient to warrant a person of reasonable

caution in the belief that an offense has been committed by the person to be

arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation

marks and citations omitted). *See also Walczyk*, 496 F.3d at 156 ("[F]ederal and

Connecticut law are identical in holding that probable cause to arrest exists when

police officers have 'knowledge or reasonably trustworthy information of facts

and circumstances that are sufficient to warrant a person of reasonable caution

in the belief that the person to be arrested has committed or is committing a crime.") (quoting *Weyant v. Okst*, 101 F. 3d 845, 852 (2d Cir. 1996)).  "Whether probable cause existed is a question that may be resolved as a matter of law on a motion for summary judgment if there is no dispute with regard to the pertinent events and knowledge of the officer."  *Weinstock v. Wilk*, 296 F. Supp. 2d 241, 256 (D. Conn. 2003) (citing *Weyant*, 101 F.3d at 852).  Moreover, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."  *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).  *See also Johnson v. Ford*, 496 F. Supp. 2d 209, 213 (D. Conn. 2007) (AWT) ("Because the existence of probable cause depends on the probability, rather than the certainty, that criminal activity has occurred, the validity of an arrest does not require an ultimate finding of guilt.").

"Probable cause is to be assessed on an objective basis."  *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted).  "Other than the facts known to the arresting officer at the time of arrest, an officer's state of mind is irrelevant."  *Id.* at 153.  Thus, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively,

justify that action."  *Id.* (internal quotation marks omitted).  The Second Circuit

has explained that "probable cause is a fluid concept . . . not readily, or even

usefully, reduced to a neat set of legal rules . . . While probable cause requires

more than a mere suspicion of wrongdoing, its focus is on probabilities, not hard

certainties."  *Walczyk*, 496 F.3d at 156 (internal quotation marks and citation

omitted).  "In assessing probabilities, a judicial officer must look to the factual

and practical considerations of everyday life on which reasonable and prudent

men, not legal technicians, act."  *Id.*  In sum, probable cause "requires only such

facts as make wrongdoing or the discovery of evidence thereof probable."  *Id.* at

157.

Even when there is no probable cause to arrest, "[u]nder federal law, a

police officer is entitled to qualified immunity where (1) his conduct does not

violate clearly established statutory or constitutional rights of which a reasonable

person would have known, or (2) it was objectively reasonable for him to believe

that his actions were lawful at the time of the challenged act."  *Benn v. Kissane*,

510 F. App'x 34, 37-38 (2d Cir. 2013).  Thus, a law enforcement officer "is

nonetheless immune from a claim of false arrest if either (a) it was objectively

reasonable for the officer to believe that probable cause existed, or (b) officers of

reasonable competence could disagree on whether the probable cause test was

met."  *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999).  The

Second Circuit has recently reiterated that:

> [i]n the context of probable-cause determinations, the
> applicable legal standard is clear, but there are limitless
> factual circumstances that officers must confront when
> applying that standard.  Accordingly, there can

> frequently be a range of responses to given situations
> that competent officers may reasonably think are lawful.
> An officer is shielded from liability if there was arguable
> probable cause at the time of arrest—that is, if officers
> of reasonable competence could disagree on whether
> the probable cause test was met.  The essential inquiry
> ... is whether it was objectively reasonable for the officer
> to conclude that probable cause existed.

*Benn*, 510 F. App'x at 38 (internal quotation marks and citations omitted).

Troopers Collins and Narcisse argue that this Court should grant dismissal of Castro's false arrest and malicious prosecution claims at this very early juncture because the Troopers had probable cause, or at least arguable probable cause, to arrest Castro for larceny.  Under Connecticut law, a person may be guilty of larceny

> when, with intent to deprive another of property or to
> appropriate the same to himself or a third person, he
> wrongfully takes, obtains or withholds such property
> from an owner.  Larceny includes, but is not limited to:
> (4) Acquiring property lost, mislaid or delivered by
> mistake.  A person who comes into control of property
> of another that he knows to have been lost, mislaid, or
> delivered under a mistake as to the nature or amount of
> the property or the identity of the recipient is guilty of
> larceny if, with purpose to deprive the owner thereof, he
> fails to take reasonable measures to restore the
> property to a person entitled to it.

Conn. Gen. Stat. § 53a-119(4).  Pursuant to Conn. Gen. Stat. § 53a-125a, a person is guilty of larceny in the fifth degree, which is a class B misdemeanor, "when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds five hundred dollars."  Conn. Gen. Stat. § 53a-125a.

9

Here, Defendants have not argued in their motion to dismiss why probable cause to arrest Ms. Castro existed; only that it did.  They do contend, however, that the defendants had arguable probable cause for Castro's arrest, based on the following evidence:

> [t]he defendants viewed a casino videotape that showed a woman dropping a white envelope, followed moments later by the plaintiff picking up that envelope, tucking it under her coat that was draped over her arm, and walking straight into a female restroom.  When she emerged, she was asked about the envelope and she admitted that she picked it up, but denied it had any contents.

[Dkt. 11-1, Ds' MTD p. 11].  Thus, Defendants argue that information from security staff, video evidence, and the Plaintiff's own statements prove arguable probable cause.  However, none of the foregoing evidence appears in either the complaint or the record in this matter.  The complaint does not allege that the video showed another woman dropping an envelope, that the Plaintiff picked up the *same* envelope "moments later," that Castro tucked the envelope under her arm, that she walked *straight* into a female restroom, or that she made any statements to the Troopers or to anyone else upon emerging.  This Court's review on a motion to dismiss pursuant to Rule 12(b)(6) is "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference."  *McCarthy*, 482 F.3d at 191.  Further, a qualified immunity defense may be asserted in a motion to dismiss under Rule 12(b)(6) "as long as the defense is based on facts appearing on the face of the complaint."  *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir.

**10**

2008) (citation omitted).  "[A] qualified immunity defense can be presented in a Rule 12(b)(6) motion, but ... the defense faces a formidable hurdle when advanced on such a motion and is usually not successful."  *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006); *Barnett v. Mount Vernon Police Dep't*, 12-1381, 2013 WL 1846317, at *1 (2d Cir. May 3, 2013) (substantially same). Accordingly, "[d]efendants moving to dismiss a suit by reason of qualified immunity would in almost all cases be well advised to move for summary judgment, rather than for dismissal under Rule 12(b)(6) or 12(c)."  *Barnett*, 2013 WL 1846317, at *1 (2d Cir. May 3, 2013).  Because none of the evidence to which Defendants cite appears in the record before the Court or within the complaint, the citation to this alleged evidence is improper and the Court will not credit it.

According to the allegations in the complaint, which this Court must deem to be true for purposes of a motion to dismiss, a Casino patron reported that she mislaid a white envelope containing $1,000 cash, and a Casino camera recorded Ms. Castro bending over to pick up a white envelope and then heading into a female restroom.  Defendants confronted Ms. Castro based on the video evidence and arrested her for larceny pursuant to the above statute.  During the course of this arrest, the Troopers searched Ms. Castro's purse and found $1,000 in cash in the same denomination as the money reported lost by the Casino patron, which Castro claimed belonged to her and for which she told the Troopers she had a bank receipt at her home.  The Defendants gave this $1,000 cash to the complaining patron.  Castro appeared in superior court and a nolle was entered in her favor, with no consideration offered.

It is simply too early at this stage of litigation – where the record is wholly undeveloped – for the Court to make an informed decision based on the totality of the circumstances as to whether Troopers Narcisse and Collins had probable cause for Plaintiff's arrest or whether they are entitled to qualified immunity.  The Plaintiff has alleged that the cash found in her purse belonged to her and that she notified the Troopers that she had a receipt for the cash in her home.  Even if the Troopers believed Ms. Castro to be untruthful, there is no evidence yet in the record as to what, if anything, the Troopers knew of any reasonable measures Ms. Castro might have taken to restore any lost property to its rightful owner,[1] how long a period elapsed between Castro picking the envelope up off the floor and her exiting the women's bathroom, or what her intent may have been

---

[1]   The Plaintiff urges the Court to read Conn. Gen. Stat. § 53a-119(4) in conjunction with Conn. Gen. Stat. § 50-10, which enumerates the duties of a finder of lost property, including the time period in which he must report any find, as follows:

> Any person who finds and takes possession of any article of the value of one dollar or more shall report the finding of such article to the police department of the municipality in which he finds such article *within forty-eight hours from the time of such finding*. The finder of such article shall, at the time of reporting, furnish to the police department the date, time and place of finding, his name and address and a description of the article found, and, within a period of one week from such finding, shall deliver such article to the police department. Any person who violates or fails to comply with the provisions of this section shall be guilty of a class D misdemeanor.

Conn. Gen. Stat. § 50-10.  Plaintiff contends that § 50-10 "arguably defines what constitutes 'reasonable steps' to return the property" contemplated in § 53a-119(4), even though the two statutes do not refer to one another.  [Dkt. 12, P's Opp. to MTD, pp.7-8].  It is unnecessary for the purposes of this motion to analyze the relationship, if any, of these two statutes, although such analysis may be necessary at future stages of this litigation, and a contextual reading of the statutes is consistent with Connecticut principles of statutory construction and imminently reasonable in this context.

regarding the envelope or anything inside it such that they could have believed probable cause to exist for a violation of Conn. Gen. Stat. § 53a-119(4), which requires a guilty party to have failed to take reasonable measures to restore mislaid property to its rightful owner.  Although the Defendants do not need to prove that they had probable cause to arrest Ms. Castro for a violation of this subsection of Connecticut's larceny statute specifically, they have likewise failed to articulate what probable cause existed to believe she was committing a violation of any other law.  Further, there is no evidence in the record that the envelope Ms. Castro retrieved from the floor was the same envelope that the Casino patron reported that she had mislaid, of how much time elapsed between the patron dropping the envelope and Ms. Castro picking up an envelope, or any evidence that any cash or identification was inside the envelope at the time that Ms. Castro picked it up off the floor.  The Court has not had the benefit of either viewing the video evidence available to the parties or of ascertaining what, exactly, were the totality of the circumstances the Troopers faced at the time they arrested Ms. Castro.  In short, there is insufficient evidence yet in the record on which the Court may base an informed analysis of probable cause or qualified immunity.

In holding that a district court erred in dismissing false arrest and malicious prosecution claims on the grounds of qualified immunity and lack of probable cause at the motion to dismiss stage, the Second Circuit in *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2nd Cir. 1999) stated that "[q]ualified immunity … and probable cause … both involve judgments about

reasonableness" and concluded that "it was improper for the district court to conclude, at the [motion to dismiss] stage of the litigation, that it was reasonable for the officers to believe probable cause existed." *Id*. As noted previously, the Second Circuit has unflinchingly held that a defendant advancing a qualified immunity defense at the motion to dismiss stages faces a "formidable hurdle," is "usually not successful," and "would in almost all cases be well advised to move for summary judgment, rather than for dismissal under Rule 12(b)(6) or 12(c)." *Field Day, LLC*, 463 F.3d at 191-92; *Barnett*, 2013 WL 1846317, at *1. To grant Defendants' motion to dismiss, the Court would have to disregard the facts alleged by the Plaintiff and instead adopt the facts encouraged by the Defendants, which do not appear anywhere in the record or in the Plaintiff's complaint, without the benefit of reviewing any of the video evidence to which both the Plaintiff and Defendants cite. Consideration of these facts is improper and dismissal of Plaintiff's § 1983 claims is thus premature. Defendants' motion to dismiss Plaintiff's § 1983 claims for false arrest and malicious prosecution are DENIED.

      **b. Unlawful Search and Seizure**

The Defendants contend that because they had probable cause to arrest Ms. Castro their search of her purse and its contents was lawful as it was incident to a lawful arrest and was conducted "pursuant to, and in accordance with, established police procedures for inventory purposes." [Dkt. 11-1, Ds' MTD p. 7]. The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures, shall not be violated. . . ."  U.S. Const. amend. IV.  "The touchstone of the Fourth Amendment is reasonableness.  The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."  *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).  It is well established that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citation omitted).

Two such exceptions to the warrant requirement are a search incident to lawful arrest and a search conducted to inventory personal property taken into police custody pursuant to a lawful arrest.  *Gant*, 556 U.S. at 338; *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) ("inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment").  A search incident to lawful arrest "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations" and may include only the arrestee's person and the area within his immediate control, which means "the area from within which he might gain possession of a weapon or destructible evidence."  *Gant*, 556 U.S. at 339.  An "inventory search constitutes a well-defined exception to the warrant requirement" the justification for which "does not rest on probable cause."  *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983).  "Inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger" and "must not be a ruse for a

general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). *See also United States v. Lopez*, 547 F.3d 364, 369-370 (2d Cir. 2008) ("Such a search is not done to detect crime or to serve criminal prosecutions. It is done for quite different reasons: (1) to protect the owner's property while it is in police custody; (2) to protect the police against spurious claims of lost or stolen property; and (3) to protect the police from potential danger. . . . The Supreme Court has, however, recognized the danger to privacy interests protected by the Fourth Amendment if officers were at liberty in their discretion to conduct warrantless investigative searches when they suspected criminal activity, which searches they would subsequently justify by labeling them as 'inventory searches.'") (citing Wells, 495 U.S. at 4). Further, an inventory search must be conducted pursuant to "standardized procedures," *Lopez*, 547 F.3d at 370 (citing Supreme Court precedent), the existence of which "may be proven by reference to either written rules and regulations … or testimony regarding standard practices." *United States v. Thompson*, 29 F.3d 62, 65 (2d Cir. 1994).

Because the Court finds that it is premature at this very early point in the litigation to conclude that the Defendants had probable cause to arrest the Plaintiff, it is improper to dismiss Plaintiff's unlawful search and seizure claim on the basis that Defendants conducted a search incident to lawful arrest.

Likewise, the record is far too underdeveloped for the Court to dismiss this claim based on the Defendants' assertion that the search of Ms. Castro's purse constituted a lawful inventory search. Although the Defendants claim that the

search was conducted "pursuant to, and in accordance with, established police procedures," evidence of what procedures existed and how the Defendants complied with them is entirely absent in the record and certainly does not exist within the boundaries of Plaintiff's complaint.  Nor is there any evidence at this juncture that this search was performed for inventory purposes and not conducted because the Defendants suspected criminal activity.  The complaint specifically alleges that after confronting Ms. Castro, the Troopers issued her a summons to appear in superior court.  There is no allegation in the complaint or in the Defendants' motion to dismiss that Ms. Castro was taken into immediate custody or was detained at a police station incident to the issuance of this summons, or that any other situation existed at the time of the search by which the Court could conclude that there was a need for an inventory search to "protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, [or] to guard the police from danger."  *Wells*, 495 U.S. at 4.  The funds certainly were not inventoried as the complaint alleges that the Defendants gave to the claimant on her word the money which the Plaintiff claimed she could prove belonged her.  The allegations of the complaint support a conclusion that the search was not conducted for officer safety or to safeguard the funds at issue.  Instead, the complaint supports a conclusion that the search was conducted for the sole purpose of discovering evidence at best and to confiscate and transfer the money to the claimant at worse.   Defendants' motion to dismiss Plaintiff's unlawful search and seizure claim is therefore DENIED.

### c.  Conversion of Property

Defendants argue that Plaintiff's state law conversion of property claim should be dismissed on the merits because "the actions of the defendants were lawful" or, in the alternative, should be dismissed for lack of supplemental jurisdiction.  [Dkt. 11-1, Ds' MTD p. 13].  Defendants' motion, though, is devoid of any argument as to why dismissal of this claim on the merits is proper.  On the contrary, assuming true the facts asserted in the complaint as the Court must do on a motion to dismiss, the Defendant's conduct was not objectively reasonable. When faced with two conflicting claims to the funds, the Defendants not only arrested the Plaintiff, but they failed to safeguard the seized property.  In the face of the Plaintiff's claim that she could prove ownership of the funds, Defendants seized the funds from the Plaintiff and rather than safeguarding them until they concluded an investigation of the competing claims, the Defendants gave the money to the claimant on the basis of her word alone, without requiring the claimant to prove her ownership of the funds, and without affording the Plaintiff an opportunity to prove her ownership of the funds.

Because the Court has found that it is premature to dismiss the Plaintiff's federal law claims, Plaintiff's conversion claim also survives.  Defendants' motion to dismiss this claim is DENIED.

### d.  Intentional Infliction of Emotional Distress

The Plaintiff claims emotional distress resulting from her arrest and alleges that the Defendants each acted intentionally and with malice.  Defendants argue

**18**

that this claim must fail because the Plaintiff has failed to allege that the Defendants' conduct was extreme or outrageous.  Plaintiff counters that "reasonable people may find that an illegal arrest constitutes outrageous conduct, especially given the age of the Plaintiff," and her claim should stand. [Dkt. 12, P's Opp. to MTD p. 10].

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must demonstrate "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."  *Watts v. Chittenden*, 301 Conn. 575, 586 (Conn. 2011) (quoting *Appleton v. Bd. of Ed.*, 254 Conn. 205, 210 (Conn. 2000)).  "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine.... Only where reasonable minds disagree does it become an issue for the jury."  *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 527 (Conn. 2012).  *See also Cassotto v. Aeschliman*, 130 Conn. App. 230, 235 (Conn. App. Ct. 2011) (same); *Winter v. Northrup*, 334 F. App'x 344, 347 (2d Cir. 2009) (same).  "[I]n assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeping function.  In this capacity, the role of the court is to determine whether the allegations of a complaint, counterclaim or cross complaint set forth behaviors that a reasonable fact finder could find to be extreme or outrageous.  In exercising this responsibility, the court is not fact

finding, but rather it is making an assessment whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress." *Hartmann v. Gulf View Estates Homeowners Ass'n, Inc.*, 88 Conn. App. 290, 295 (Conn. App. Ct. 2005); *Gagnon v. Housatonic Valley Tourism Dist. Comm'n*, 92 Conn. App. 835, 847 (Conn. App. Ct. 2006) (same).

Liability for intentional infliction of emotional distress

> requires conduct that exceeds all bounds usually
> tolerated by decent society.... Liability has been found
> only where the conduct has been so outrageous in
> character, and so extreme in degree, as to go beyond all
> possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized
> community. Generally, the case is one in which the
> recitation of the facts to an average member of the
> community would arouse his resentment against the
> actor, and lead him to exclaim, Outrageous! ... Conduct
> on the part of the defendant that is merely insulting or
> displays bad manners or results in hurt feelings is
> insufficient to form the basis for an action based upon
> intentional infliction of emotional distress.

*Perez-Dickson*, 304 Conn. at 527 (quoting *Appleton*, 254 Conn. at 210–11).  *See also Cassotto*, 130 Conn. App. at 236 ("Although the defendants' alleged behavior no doubt was hurtful and distressing to the plaintiff, plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind").  Moreover, "wrongful motivation by itself does not meet the standard for intentional infliction

of severe emotional distress; rather, it is the act itself which must be outrageous." *Id.* at 528 (citation omitted).

Further, where an intentional infliction of emotional distress claim is based on a plaintiff's arrest, and probable cause exists for that arrest, an intentional infliction of emotional distress claim may not stand: "enforcement of the law can hardly be called conduct beyond the acceptable bounds of decent society. Subjecting a government official or employee to litigation for infliction of emotional distress arising from a valid arrest would be contrary to public policy and inhibit the enforcement of the law." *Brooks v. Sweeney*, CV 06 5005224S, 2008 WL 5481203 (Conn. Super. Ct. Nov. 28, 2008) *aff'd*, 299 Conn. 196, 9 A.3d 347 (Conn. 2010) (emotional distress claim failed where arrest warrant issued upon probable cause). *See also Winter v. Northrop*, CIVA 306-CV-216 PCD, 2008 WL 410428 (D. Conn. Feb. 12, 2008) *aff'd sub nom. Winter v. Northrup*, 334 F. App'x 344 (2d Cir. 2009) (emotional distress claim failed where probable cause existed for plaintiff's arrest). Here, because the Court has declined at this stage to find that probable cause existed for Plaintiff's arrest, the Court also declines to dismiss Plaintiff's emotional distress claim based on Defendants' argument that probable cause existed.

The allegations of intentional infliction of emotional distress in Ms. Castro's complaint are legally sufficient to support her claim at this early stage in the proceedings. *See Razzano v. Cnty. of Nassau*, CV 07-3983 ADS AKT, 2012 WL 1004900 (E.D.N.Y. Feb. 27, 2012) *report and recommendation adopted*, 07-CV-3983 ADS AKT, 2012 WL 1004898 (E.D.N.Y. Mar. 23, 2012) (awarding damages for

emotional distress where police officers removed guns, including heirlooms, from person's home despite being informed that owner of guns has a valid permit, causing the owner to cry at the time of the taking and alter his behavior after the taking, as reflected in the testimony of the plaintiff and other witness at trial).  The Plaintiff alleges in her complaint that she was falsely arrested by the Defendants, that the Defendants unlawfully searched her purse and seized the cash inside it and gave it to another person who claimed, but offered no proof of, its ownership.  The only corroboration allegedly possessed by the Defendants was the identity of the denominations of the money allegedly lost and that was found in the Plaintiff's purse.  The actual denominations, which are not in the record, are relevant to the probity of that fact.  The Plaintiff was allegedly arrested and her money seized despite her claim that the money was hers and that she had a receipt at her home to prove it.  The complaint alleges that the Plaintiff's money was turned over to the claimant without giving her an opportunity to present her proof that the money was hers.  The money was not seized and safeguarded pending a hearing or due process of any kind.  The elderly and law-abiding Plaintiff was forced to appear in criminal court to face criminal charges due to the allegedly intentional and malicious acts of each Defendant.  [Dkt. 1, Compl. at ¶ ¶ 7 and 21].  Ms. Castro's allegations that the Defendant knew or should have known that emotional distress was the likely result of their seizure of her person and property, the dismissal of her ownership claim, their refusal to give her an opportunity to prove that the money was hers and their transfer of her property to another person all without any due process was extreme and

outrageous.  The allegations that the Plaintiff, an elderly law-abiding person, lost her money, lost her good name and endured criminal prosecution buttress her claim that the Defendants' conduct was extreme or outrageous and fell "beyond all possible bounds of decency," such as to be "atrocious, [or] utterly intolerable in a civilized community" such as ours where our constitution affords us the presumption of innocence and the right to be secure in and free from deprivation of our property without due process of law.  We all find solace in the hope if not the belief that our law enforcement officers will fairly and objectively protect the legal rights of all citizens regardless of their race, gender, or ethnicity to be free from the deprivation of their property without due process of the law.  A betrayal of that fundamental constitutional right at the hands of one charged with serving and protecting us is unquestionably distressing.  The degree to which the Plaintiff suffered is a question better suited for summary judgment or trial as it is highly fact specific.  Therefore, Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress claim is DENIED.

<u>Conclusion</u>

For the foregoing reasons, Defendants' [Dkt. 11] Motion to Dismiss the Complaint is DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 26, 2013

23